1  Eric M. Schiffer (SBN 179695)
   Kelly A. Beall (SBN 162456)
2  WOLFE & WYMAN LLP
   5 Park Plaza, Suite 1100
3  Irvine, California 92614-5979
   Telephone: (949) 475-9200
4  Facsimile: (949) 475-9203

5  Attorneys for Defendant
   NATIONAL CITY MORTGAGE COMPANY
6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 | JAIME P. ARAUJO, ROSA A. ARAUJO          | Case No.: CV080695
      Sramineus Homo, US Vessel

12                                            | **DEFENDANT'S REQUEST FOR**
          **Libellant,**                      | **JUDICIAL NOTICE IN SUPPORT**
13                                            | **OF PETITION FOR FAILURE TO**
          V.                                  | **STATE A CLAIM UPON WHICH**
14                                            | **RELIEF CAN BE GRANTED**
   NATIONAL CITY MORTGAGE CO., U.S.
15 Vessel DOES, ROES, AND MOES 1-100 et
   al, US Vessel sand
16                                            | Date:        May 8, 2008
          **Libellees,**                      | Time:        2:00 p.m.
17                                            | Courtroom:   2

18 Jaime-Pablo: Araujo & Rosa-Amanda:         | Honorable    Claudia Wilken
   Araujo Lien Holder of the Vessel, the Real
19 Party In Interest, Lawful Man
   **Injured Third Party**
20 **Intervener/Petitioner/ Libellant,**

21        V.

22 NATIONAL CITY MORTGAGE CO., U.S.
   Vessel, DOES, ROES, and MOES 1-100 et
23 al
        **US VESSELS**
24 **INDIVIDUALLY AND SEVERALLY**
   **Third Party Defendants/Libellees**
25

26

27 **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

28

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

**PLEASE TAKE NOTICE** Defendant National City Mortgage Company ("National City") requests the Court to take judicial notice of the following documents pursuant to Federal Rules of Evidence Rule 201:

1. No. Misc. C 07-80234 CRB - Order of Dismissal With Prejudice

2. United States v. Johnson and Heineman, Slip Copy, 2008 WL 205596 (N.D.Cal.)

3. United States District Court v. Countrywide Home Loans, Inc., 2005 WL 3262971.

4. United States District Court v. McQuaid d/b/a Chevy Chase FSB, 2007 WL 1425497.

5. United States District Court v. Homeq Servicing Corporation, 2006 WL 626050.

6. United States District Court v. Merck & Co., 2006 WL 2094677.

DATED:     March 26, 2008                WOLFE & WYMAN LLP


By: _____
ERIC M. SCHIFFER
KELLY ANDREW BEALL
Attorneys for Defendant
**NATIONAL CITY MORTGAGE
COMPANY, ET., AL.**

EXHIBIT 1

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11    MONTASER MOSA RASHID,                 No. Misc. C 07-80234 CRB
12              Plaintiff,                  **ORDER OF DISMISSAL WITH
                                            PREJUDICE**
13        v.
14    FIRST FRANKLIN LOAN SERVICES, et
      al.,
15
                Defendants.
16    _____/
17
18        Plaintiff, proceeding pro se, filed this action against First Franklin Loan Services, a
19    residential wholesale lender, as a miscellaneous action. Plaintiff identifies himself and First
      Franklin as a "vessel." As plaintiff's papers are incomprehensible and it is impossible for the
20    Court to discern the basis for plaintiff's lawsuit, on October 31, 2007 the Court dismissed the
21    action with 20 days leave to amend.
22        As of the date of this Order plaintiff has not amended his complaint and has not
23    otherwise communicated with the Court. Accordingly, this action is DISMISSED with
24    prejudice. The December 7, 2007 hearing on defendants' motion to dismiss is therefore
25    VACATED as moot.
26        **IT IS SO ORDERED.**
27    Dated: November 28, 2007                  _____
28                                              CHARLES R. BREYER
                                                UNITED STATES DISTRICT JUDGE

G:\CRBALL\2007\87234misc\orderofdismissal2.wpd

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

EXHIBIT 2

**U.S. v. Johnson**
Slip Copy, 2008 WL 205596
N.D.Cal.,2008.
January 24, 2008 (Approx. 7 pages)

⏸

Slip Copy, 2008 WL 205596 (N.D.Cal.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

**United States** District Court,
N.D. California.
**UNITED STATES** of America, Plaintiff,
v.
Kurt F. **JOHNSON** and Dale Scott **Heineman**, Defendants.
No. CR 05-0611 WHA.
Jan. 24, **2008** .

James E. Keller, U.S. Attorney'S Office, Oakland, CA, for Plaintiff.

**ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR GRAND JURY TESTIMONY**

WILLIAM ALSUP, District Judge.

**INTRODUCTION**

**\*1** In this criminal mortgage-fraud action, a jury found defendants Kurt Johnson and Dale Heineman guilty of conspiracy and over thirty counts of mail fraud. Defendants now move for a judgment of acquittal. They also separately move for service of subpoenas to the government for grand jury transcripts. For the reasons stated below, their motions are **DENIED.**

**STATEMENT**

Since this will be the last order in the district court, a review of the procedural history may assist the court of appeals. In brief, defendants promoted an Internet scam aimed at home mortgages. Defendants claimed to be able to eliminate mortgages altogether. After collecting a fee from a homeowner in distress, defendants recorded a phony land record purporting to reconvey the home free and clear of the loan. This was part of a series of steps promoted as the Dorean Process. The reconveyance was recorded without the consent or knowledge of the lender. This was the principal fraud and occurred as to every count. Thrilled to have their homes free and clear, many borrowers ceased payments. Foreclosures were initiated, some taken to completion. Lenders eventually discovered the falsification in the land records. Before this discovery, however, defendants tried to compound the fraud, seeking to borrow yet more money from a new and unsuspecting lender, using the free and clear status of the home as collateral. Defendants told the homeowners that the new loan would be eliminated in the same way. As to some counts, defendants succeeded in obtaining additional loan proceeds. Defendants and their confederates kept seventy-five percent of the new loan proceeds and the homeowners received twenty-five percent. Defendants wired large sums to a bank in Latvia that have never been recovered. In no case did the scheme succeed in eliminating a mortgage, although considerable consternation and effort were required to undo the confusion. The details now follow.

## 1. THE DOREAN SCHEME.

Defendants were the founders and principals of the Dorean Group, an unincorporated, unlicensed entity that promoted a "debt-elimination" program. The scheme ran from 2004 to 2005. With the aid of brokers and the Internet, defendants and the Dorean Group advertised to borrowers that they could eliminate debt on the borrowers' homes and earn a profit in the process. Client borrowers were homeowners with loans obtained from lenders and secured by their home properties. To be a part of the debt-elimination program, client borrowers had to pay a one- to three-thousand dollar fee to the Dorean Group.

The property of the client borrowers was placed into "family trusts," with defendants as the trustees, who would then mail "presentment packets" to lenders. These "presentment packets" were thick and full of "gobbledygook," as one lender testified. Among many other things, the packet demanded that the lender prove the validity of its loan within ten days ("to the unilateral satisfaction of the Dorean Group"), or else, it was said, defendants would automatically become trustees for the lender. When the lender ignored or rejected the "presentment packet," defendants would file a substitution-of-trustee form at the county recorder's office. The lender was not given notice of the filing. This was fraudulent, of course, for the lender had not authorized defendants to act as its agents. The lender was not given notice of the filing.

*2 Now as self-proclaimed agents for the lender, defendants further filed a full reconveyance of the property back to the family trust, reciting that the loan had been paid in full. This was the centerpiece of the fraud. Defendants wrongfully stated that the original lender had been paid in full and therefore had no further interest in the property. Defendants also claimed to have the authority to act for the lender even though no such authority had ever been given. The lender, of course, had no knowledge that its collateral had been "reconveyed" and continued to presume that its security was tidily in place. Borrowers, however, were shown the reconveyance and reacted with relief and joy.

Many client borrowers stopped making mortgage payments. Unaware of the fraudulent scheme, lenders gave notices of default. Some borrowers got cold feet and paid their mortgage payments. Others continued with the "Dorean Process"-they declined to pay and eventually had their properties foreclosed on, losing all their arguments when the matter reached court. Although the lenders were the main victims of the scheme, many of the homeowners were also victims and lost their homes in foreclosure, in addition to paying the up-front Dorean fee. In a few cases, defendants went so far as to convince their client borrowers to obtain a new loan from a separate and unwitting lender. The new loans were secured by the borrowers' purportedly now-unencumbered properties. Defendants kept most of the loan proceeds, giving twenty-five percent to the homeowners. Millions of dollars were wired by defendants to a bank in Latvia, none of which has been recovered. Many hundreds paid the fee and went through the sad story told by the evidence, although only thirty-six examples were selected as counts in the indictment.

## 2. PROCEDURAL HISTORY.

Defendants first appeared in this district as plaintiffs in a civil suit. *See The Frances Kenny Family Trust v. World Savings Bank FSB,* C 04-03724 WHA. Frances Kenny was a borrower victim, a client of the Dorean Group. World Savings Bank was a lender victim, threatening to foreclose. By this stage, many foreclosures were imminent. Defendants launched the litigation, evidently as a lulling step to show borrower clients that they were defending the Dorean Process. In a thirty-four page pleading filed in September 2004, plaintiffs sought, among other things, "a judicial declaration that World Savings Bank FSB did not make a loan of lawful United States money on or about July 18, 2002, to Frances Kenny," and "a judicial declaration that any alleged loans, mortgages and notes secured by the trust deeds on the property ... are void ab initio and of no force or effect" (Compl.¶¶ 172, 174). The pleading was brimming with incomprehensible

blather and riddled with ornate flubdubs. Attorney Thomas Spielbauer, later a trial witness, submitted the complaint.

On a motion to dismiss, counsel for World Savings Bank pierced through the mumbo-jumbo of the pleading and cut to the heart of the matter: "Heineman and Johnson, along with their attorney Thomas Spielbauer have apparently developed an internet cottage industry whereby they scam defaulted debtors into conveying rights and property interests to them in exchange for a bogus claim that the debtors will be relieved from debt by the presentment to the lender of fraudulent and illegal 'bonds' and other fictitious instruments" (Dkt. 11, C 04-03724 WHA). In November 2004, four other cases were related to the *Frances Kenny* case, as it had become clear that defendants and Attorney Spielbauer had filed numerous similar civil complaints.

*3 After hearing and considerable effort to pull the essence of the matter from calculated confusion, the *Frances Kenny* complaint was dismissed with prejudice and Attorney Spielbauer was ordered to show cause why he should not be sanctioned for filing a fraudulent pleading. After hearing, Spielbauer was sanctioned, ordered to pay ten thousand dollars, and referred to the state bar. The order, dated January 19, 2005, described the elaborate Internet scam orchestrated by plaintiffs Scott Heineman and Kurt Johnson. The order further noted that fifteen such "vapor money" cases had been filed.[FN1] The matter was referred to the United States Attorney's Office. The order stated, "Given the serious and disturbing nature of the allegations set forth above, including the possibility of mail and wire fraud to further an Internet scam upon distressed and vulnerable citizens about to lose their homes, not to mention the lenders, the Clerk shall send a copy of this order to [the United States Attorney's Office]. The Court makes no recommendation as to how the United States Attorney should deal with the instant matter" (Dkt. 59, C 04-3724 WHA). It turned out that the FBI had already been investigating defendants' scheme.

FN1. The other civil cases were as follows: *The Case Family Trust v. Ameriquest Mortgage Co.,* C 04-04559 WHA; *The James J. Shylock, Jr. Family Trust v. America's Wholesale Lender,* C 04-04487 WHA; *The Shakvirovich Family Trust v. WMC Mortgage Co.,* C 04-04486 WHA; *The Beard Family Trust v. Washington Mutual Bank,* C 04-04466 WHA; *The Pafundi Family Trust v. Wells Fargo Bank N.A.,* C 04-04465 WHA; *The Mitchell Family Trust v. Keybank Nat'l Ass'n,* C 04-04285 WHA; *The Edward A. & Janice L. Costa Family Trust v. Capital Commerce Mortgage Co.,* C 04-04246 WHA; *The Heineman Family Trust v. Freedom Mortgage Corp.,* C 04-04185; *The Elisa's Hope Trust v. Fieldstone Mortgage Co.,* C 04-4014 WHA; *The Komes Family Trust v. World Savings Bank,* C 04-04013 WHA; *The Margery Naomi Johnson Family Trust v. Homecoming Financial Network, Inc.,* C 04-04012 WHA; *The Williamson Family Trust v. CIT Group/Consumer Finance, Inc.,* C 04-03898 WHA; *The Magoon Family Trust v. Green point Mortgage Funding,* C 04-03897 WHA; *The Raymond J. Gaudreau Family Trust v. Ameriquest Mortgage Co.,* C 04-03776 WHA; and *The Frances Kenny Family Trust v. World Savings Bank FSB,* C 04-03724 WHA.

In July 2005, the government filed a civil action against defendants and the Dorean Group. *See United States v. Heineman, et al.,* C 05-02730 WHA. The government sought an injunction "permanently enjoining defendants, their agents, brokers, employees, and all persons acting in concert and participation with them, from engaging in their mortgage elimination scheme" (Compl. ¶ 26, C 05-02730 WHA). The government also sought a temporary restraining order with similar terms. The requests for a temporary restraining order and preliminary injunction were granted. Defendants returned a copy of the injunction to the Court, with a notice entitled, "Notice of Return for Cause without Dishonor" (Dkt. 23, C 05-02730 WHA). Since then, the preliminary injunction has been modified numerous times for the limited purpose of reconveying back to homeowners the property that had been transferred to defendants or their "business" entities. There have been dozens of these reconveyances.

A grand jury indicted defendants (and others who had acted as brokers) in September 2005. At that point, defendants were already in state custody in Salt Lake County, Utah, on related charges. A superseding federal indictment filed on February 16, 2006, charged defendants with

one count of conspiracy in violation of 18 U.S.C. 1349, thirty-six counts of mail fraud in violation of 18 U.S.C. 1341, twenty-six counts of bank fraud in violation of 18 U.S.C. 1344, two counts of criminal contempt in violation of 18 U.S.C. 401(3), and three counts of forfeiture in violation of 28 U.S.C. 2461 (Dkt. 14, CR 05-0611 WHA). Utah elected to recede in light of the federal charges and **Heineman** and **Johnson** were transferred to the Northern District of California. Another accused was apprehended on the run in Panama and extradited to the **United States**. To streamline the case, the government eventually dropped the bank fraud counts. The forfeiture counts were severed for a subsequent trial. At the close of the evidence, the government moved to dismiss the contempt counts. All accused pled guilty except for defendants **Heineman** and **Johnson**.

   ***4** Defendants **Heineman** and **Johnson** refused counsel. A *Faretta* hearing began in March 2006. Resources were provided to assist defendants in evaluating their request to represent themselves and the risks inherent in doing so. Before completing the *Faretta* hearing, the Court conducted an inquiry into the mental capacity of defendants to understand and to intelligently waive their right to counsel as well as to stand trial. This was prompted, in part, by a show of bizarre behavior that might suggest incompetence. The examination order stated, "[D]efendants Heineman and Johnson, who have refused counsel thus far, have made multiple statements that give reason to believe that they may suffer from a mental disease or defect that renders them mentally incompetent ... or at least the record might suggest incompetence to an appellate court" (Dkt. 41, CR 05-0611 WHA). For example, defendants had stated that they were in contact with Jesus and "that he had told them he was burning down three judge's homes" ( *ibid.*). Defendants then filed notices of "refusal for cause without dishonor" to submit to mental examinations.

   On May 11, 2006, Dr. James Missett, appointed to conduct the mental examination, testified. He said that defendants had been usually uncooperative when interviewed. He also observed that defendants had appeared to be animated and "jocular with each other ." They had provided a writing to Dr. Missett stating, "The notice says it all." Defendants had refused to cooperate with the exam. Defendants had been interviewed separately. Heineman frequently had repeated, "The notice says it all." Their notice had been replete with more mumbo-jumbo. Dr. Missett had difficulty making observations but stated that "to have two individuals who are independently suffering from a major mental illness really like close friends is not consistent with a major mental illness." The doctor called their antics a "real Mutt and Jeff kind of presentation" (Dkt. 198, CR 05-0611 WHA).

   Significantly, at the hearing itself, Johnson rose to cross-examine Dr. Missett. Johnson performed competently and asked rational questions, organized into cognizable themes. As a result of the cross-examination, Dr. Missett stated, "I have absolutely no doubt at all after listening to you today that you are completely competent to understand the nature of the proceedings being taken against you, and you are completely competent to assist in your own defense" ( *ibid.*). Dr. Missett found **Heineman** similarly competent after being cross-examined by **Heineman**. The undersigned saw and heard the cross-examinations by **Johnson** and **Heineman**. For laymen, they did an excellent job and presented themselves with sober clarity, rationality, and organization. Based on all the foregoing including Dr. Missett's finding, the Court found **Heineman** and **Johnson** competent (Dkt. 67, CR 05-0611 WHA).

   Having found defendants competent, the *Faretta* hearing continued on May 16, 2006. After a lengthy colloquy, both defendants knowingly and intelligently waived their right to appointed counsel (Dkt. 86, CR 05-0611 WHA). It is worth adding that both defendants were adamant in rejecting counsel. At many points in the pretrial (right up to the eve of trial), the Court re-opened the issue and urged defendants to accept counsel, each to have his own at no expense, but they refused at every opportunity. Nonetheless, the Court appointed Attorney Richard Tamor to serve as a resource to both defendants on *procedural* issues. An experienced paralegal was appointed to assist defendants. The Court called in prison officials and obtained their cooperation in providing computers, printers, a law library, and access to all electronic discovery. Both

defendants were housed in the same facility to aid their collaboration. The Court decided not to appoint standby counsel since two would be needed, if any were eventually activated, and since an undue risk existed that defendants would abuse any such appointment.

**\*5** In June 2006, defendants filed a "Writ of Mandamus and Prohibition," which the undersigned treated as a motion to recuse. Defendants wrote that "Respondent Alsup is conflicted and precluded from being a non-biased trier of fact" (Dkt. 113, CR 05-0611 WHA). The motion was referred to the reassignment committee and heard by the Honorable Susan Illston. Defendants based their recusal motion on comments made by the undersigned in an order dismissing defendants' claim against banks-such as calling their operation an "elaborate Internet scam." Judge Illston found that these remarks were not hostile, nor was the referral of the case to the United States Attorney's Office. She found that the case had been referred to the federal prosecutor's office "out of concern, based upon defendants' own statements, that a crime may have been committed." She denied the motion to recuse (Dkt. 216, CR 05-0611 WHA).

Defendants' imagination has not slept in inventing ways to frustrate and abuse the judicial process. Two examples will suffice. As stated, the Court arranged for defendants to be provided with laptop computers to aid their trial preparation. To arrange this required several hearings with prison officials, the United States Attorney, and the court-appointed paralegal. Defendants quickly abused the privilege, however. They used the computer and printer to prepare a phony court order calling for their release. It appeared with the unauthorized signature of the undersigned. The "order" stated (Dkt. 144, CR 05-0611 WHA):

The men held as defendants DALE SCOTT HEINEMAN, and KURT F. JOHNSON have proven that they are men entitled to the common law; claimants have supplied no evidence to the contrary. They have also proven that the defendants are Cestui Que Trust/beneficiaries created for commerce by unknown settlers in conjunction with parents and that the men are the paramount creditors. Consistent with my Oath of Office to defend the common law I hereby order this case dismissed for failing to state a claim to which relief can be granted at law. The claims are statutory in nature and without personam jurisdiction to the natural men. It has been proven that good faith tender was made in honor and that this court lacked any subject matter jurisdiction absent a controversy. I have authorized Kurt F: [sic] **Johnson** as agent by contractual agreement to sign on my behalf this order of dismissal. The clerk is hereby ordered to prepare the necessary paperwork for the immediate release of KURT F. **JOHNSON** 13177-081 and DALE SCOTT **HEINEMAN** 12152-081 from the Board of Prisons facility in Dublin and to supply it to the Marshals for execution. This case is hereby dismissed.

To pause over one more example, defendants fabricated a phony 1099 **United States** IRS Form. Under "PAYER'S name, street address, city, state, ZIP code, and telephone no.," defendants wrote: "KURT F. **JOHNSON**, 125 E. SUNNYOAKS AVE. # 207, CAMPBELL CA 95008." They wrote "SETTLEMENT BOND FOR FIDUCIARIES" under "description." The "original issue discount for 2007" was stated at ten million dollars. Such "1099s" were mailed out for several judges on our bench, including the undersigned.

**\*6** The Court is convinced and found on the record several times that defendants' antics were simply part of a calculated and concerted effort to confuse the record and to leave the impression that they were either not competent or were being treated unfairly. Without question, defendants were and are sane and able, and their affectations are just that-affectations. Despite the roguery, the Court went to considerable lengths to ensure a fair proceeding.

* * *

The trial finally began in October 2007. The Court ordered the marshals to provide each defendant with two sets of civilian clothes to wear during trial. Both defendants refused and insisted on wearing jail garb, as was their right under appellate law. Insisting on representing themselves, defendants examined witnesses, called witnesses (including an expert witness), and

argued their own cases. The Court went to reasonable lengths to ensure witnesses and subpoenaed documents were made available for the defense. The trial lasted approximately a month. At least two charging conferences were held on the Court's proposed instructions. Defendants made precious few objections to the instructions. A jury found defendants guilty on all counts. Sentencing will occur in eight weeks. After the verdict, the Court recommended that defendants allow counsel to be appointed for post-trial proceedings, but they both refused.

Still pro se, defendants now move for a judgment of acquittal. They claim that: (i) the district court lacked jurisdiction; (ii) the jury instructions were improper; (iii) the mail-fraud statute was unconstitutionally vague; (iii) there was insufficient evidence to sustain their conviction; and (iv) there was impermissible constructive amendment. In a separate motion, defendants also request that an order be issued to the government for the production of grand jury transcripts. After hearing, this order rejects these arguments and sustains the convictions.

## ANALYSIS

## 1. SUBJECT-MATTER JURISDICTION.

Defendants contend that the district court lacked subject-matter jurisdiction on several grounds: the grand jury would not have indicted defendants had it been presented with sufficient evidence; the government erroneously based federal jurisdiction on the financial institutions (lenders) being victims; and the undersigned, jury, and victims did not reside in the United States. None of these arguments has any merit.

*First,* defendants provide no evidence to support their proposition that the grand jury would not have returned an indictment had it been in full possession of the facts. "[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States,* 487 U.S. 250, 254, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).[FN2] Here, defendants merely make conclusory allegations. Their argument has a tautological quality: they claim that, although they have no evidence that the grand jury made a mistake, the fact that an indictment was returned showed that there must have been a mistake. The evidence of guilt at trial was compelling.

FN2. Unless indicated otherwise, internal citations are omitted from all cites.

*\*7 Second,* defendants argue that "[t]he financial institutions were the jurisdictional hook for the federal government's access to the defendants." The lenders were deemed to be the victims of the scheme to defraud. There was, however, a lack of any "proven fact of a financial institution" (Br.6). Furthermore, "[i]t is the financial institution's covering contract with the FDIC [Federal Deposit Insurance Corporation] that gives the federal government standing as a party or what is known as jurisdiction ... [but] not one FDIC certificate of any alleged victim was entered into evidence and no testimony was obtained" ( *ibid.*). This order interprets defendants' argument to mean that subject-matter jurisdiction was absent because there was no evidence showing that the lenders were to be valid entities or that they were federally insured. These claims have little merit. The "jurisdictional hook" was the mail-fraud statute, 18 U.S.C. 1341, and the alleged mailings. To charge and try violations of the mail-fraud statute, the government was not required to prove financial institution were involved or that the victim lenders were federally insured. No particular type of victim is required for conviction of mail fraud. *United States v. Coachman,* 727 F.2d 1293, 234 (D.C.Cir.1984). Federal insurance is not an element of the federal mail-fraud statute. *See* 18 U.S.C. 1341.

It is true that the mail-fraud statute provides that if "the violation affects a financial institution," then a stiffer sentence may be imposed but, at most, that presents a sentencing issue. Generic federal mail fraud does not require that a financial institution be involved. It is also true that the indictment pled parallel bank-fraud counts. Those, however, were dismissed by

the government to streamline the trial. There was no need to prove them. The remaining mail-fraud and conspiracy counts were proven.

   *Third,* defendants claim that none of the participants in the criminal action resides in the United States. They state (Br.12-13):

[T]he court pretends to be an Article III court, with territories, enclaves, and ceded properties within the scope of the defendants [sic] activities, with a judge who has taken the federal employees oath of office and not the judicial one required by Congress to take the office. This court is an administrative, executive, debt collector of the bankrupted UNITED STATES claiming it does not exist and insisting it doesn't strangely enough by its very existence. Neither the judge nor the jury resided within the territories of the UNITED STATES as required by law, and neither did any of the victims. No jurisdiction could or ever have been relevant.

   Defendants' assertion is completely unfounded. The lenders and client borrowers and virtually all acts in evidence were in the United States.

## 2. JURY INSTRUCTIONS.

   The jury instructions constituted an abuse of discretion, defendants claim. (The final version appears at Dkt. 519.) Defendants say: "[The Court and the government] did not instruct according to the statutes charged, mis-characterized the evidence presented, were vague as to specific requirements like the 'lenders' being financial institutions as defined in Title 18 § 20 being necessary for jurisdiction and conviction, and silent on the issue of money which was essential to the accurate deciphering of the factual dispute between the parties" (Br.7). Defendants essentially argue that the Court failed to instruct the jury in a way consistent with their own understanding of lending and money. This order disagrees with defendants' characterization of the law.

   ***8** In particular, defendants now object to Instruction No. 18, which stated in part, "Within regulatory reserve requirements, banks are allowed to receive deposits from customers and then to use those deposits to make loans to borrowers; banks are also allowed to borrow money from the Federal Reserve Bank and then to use those funds to make loans to borrowers; and banks are free to use their own equity to make loans to borrowers." Defendants also object to the instruction that, "[u]nder no circumstances can the borrower simply eliminate the loan, recover the collateral, and keep the money from the loan." This is incorrect, defendants claim; the instructions misstated the law and provided an inaccurate definition of money. For example, banks essentially "create[ ] the money [ *i .e.,* promissory notes] on the spot in a lending transaction." Banks benefit from these promissory notes in that "[t]he banks using the promissory note to fund their liability instrument are getting a free loan that they simply get to eliminate without return of the collateral with the assistance now of a federal judge" (Br.8-9). Defendants argue that there is nothing, however, to support the validity of these promissory notes-no books and records, proof of consideration, material statements, or accounting experts.

   This order disagrees. *First,* defendants already waived their right to object to the instructions when they agreed to the statement of the law during the charging conferences. *Second,* defendants retained their objection regarding "money" and how it should have been explained. Defendants' voodoo notion of money made no sense whatsoever then-or now. They have provided no authority to support it.

   "When reviewing a claim of error relating to jury instructions, the instructions must be viewed as a whole. Moreover, the adequacy of the entire charge must be evaluated in the context of the whole trial. A trial judge is given substantial latitude in tailoring the instructions so long as they fairly and adequately cover the issues presented. Finally, although a criminal defendant is entitled to an instruction regarding his theory of the case, challenges which merely pertain to the trial judge's language or formulation of the charge are reversible only for an abuse of discretion."

*United States v. Marabelles,* 724 F.2d 1374, 1382-83 (9th Cir.1984) (emphasis added). Here, the instructions gave an explanation of the basic law relating to notes, deeds of trust, and the rights and duties of borrowers and lenders. The Court had the discretion to omit defendants' definition of money and lending practices, especially because no legal authority or real-world banking practices supported their claims that banks create money-or promissory notes-out of thin air. The jury instructions were proper.

## 3. CLARITY OF THE MAIL-FRAUD STATUTE.

Defendants claim that the federal mail-fraud statute is unconstitutionally vague. The mail-fraud statute provides (18 U.S.C. 1341):

***9*** Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Defendants' arguments are unavailing. " 'It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.' The standard used in examining a statute for unconstitutional vagueness is whether a person of average intelligence would reasonably understand that his conduct is proscribed." *United States v. Bohonus,* 628 F.2d 1167, 1174 (9th Cir.1980). The Ninth Circuit has upheld the application of the mail-fraud statute against a vagueness challenge. *See id.* at 1174-75; *United States v. Frega,* 179 F.3d 793, 802-03 (9th Cir.1999).

## 4. SUFFICIENCY OF THE EVIDENCE.

In ruling on a motion under FRCrP 29, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Alarcon-Simi,* 300 F.3d 1172, 1176 (9th Cir.2002). "[A] district court must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *Ibid.* "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *United States v. Reyes-Alvarado,* 963 F.2d 1184, 1188 (9th Cir.1992). This order finds that there was overwhelming evidence of guilt on all counts.

Defendants claim that there was insufficient evidence to sustain their conviction. Returning to their favorite theme, they say, "No evidence was ever presented at trial of a financial institution. The document custodians never discussed the standing of their institution and no documents of their standing was offered by the government ... No proof of mailing was made only accusations by employees or recipients that something was sent or received ... The evidence presented at trial as to an interest in property was merely county recordings, and verifications by document custodians of authentic documents. This is not evidence of a perfected claim consistent with the UCC but is only evidence of a public notice. No evidence of possession of the original promissory note was ever offered" (Br.20-21).

**\*10** This order disagrees. The government provided documented proof along each step of the Dorean Process and with respect to each loan. The most fraudulent of the corrupt steps was the filing of the reconveyance document with the county recorder's office. The reconveyance fraudulently stated that defendants had the authority to act on behalf of the lenders and that the original lender had already been paid in full. This was false-bark to core. Defendants had no such authority, nor had the lenders been paid. Furthermore, each mail-fraud count was supported by the presentment-packet mailing. The sequence of scheme documents was duplicated for each of the counts, which the government painstakingly admitted into evidence.

Contrary to defendants, the government was not required to have victims of the fraud testify. Crime victims often do testify, of course, but there is no requirement that they do so; they may be deceased, absent or afraid. Other evidence may be used to prove a crime. The government must prove the crime but it can choose its own witnesses to do so.

Viewing the evidence in a light most favorable to the prosecution, this order finds that the presentment packages and the reconveyances for each count were sufficient alone for a rational trier of fact to have found defendants guilty beyond a reasonable doubt. But the entire pattern of scheme documents has been admitted for each count, including the presentment packets, which was proven to have been mailed in each case. Proof of guilt was severely powerful.

## 5. CONSTRUCTIVE AMENDMENT.

The government dismissed all counts except the conspiracy and mail-fraud counts, and it removed language in the conspiracy count referring to bank and wire fraud. The convictions cannot stand, defendants argue, because dismissal of these counts from the original indictment amounted to an impermissible constructive amendment. The grand jury had relied on all the charges in the original indictment, and now that the government realized that it could not prove some of the charges, it "merely amended the indictment at [its] own discretion." Furthermore, "victims were switched ... [and][p]roperty rights were switched" (Br.22).

Defendants are wrong. "A constructive amendment occurs where there is 'a complex of facts [presented at trial] distinctly different from those set forth in the charging instrument,' or when 'the crime charged [in the indictment] was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved." _United States v. Freeman, 498 F.3d 893, 907 (9th Cir.2007)._ Dismissing counts that were not proven and not relied upon by the government does not constitute a constructive amendment. _See United States v. Pang, 362 F.3d 1187, 1194 (9th Cir.2004)_ ( "The failure to include in the instructions surplusage from the information was not error because only the 'essential elements' of the charge need be prove at trial"). The government had removed language that was not relied upon and would have confused the jury. Here, there was no constructive amendment because defendants were _not_ charged with one crime and then tried with another; rather, they were tried for fewer crimes than they were originally charged with.

**\*11** Defendants object to the conspiracy count. The indictment charged them with conspiracy to commit mail fraud, _wire fraud, and bank fraud._ "[T]he redactions created an indictment ... that left in all the elements of wire fraud and bank fraud, and overt acts that had to be proved while they instructed the jury they didn't have to consider them when referring to the indictment itself. No defense could be put on because these charges were supposedly dropped while surreptitiously presented to the jury" (Br.23).

This order finds that there was no error in the conspiracy proof. The Supreme Court has held that a defendant was not prejudicially surprised at trial by the absence of proof concerning one of two ways in which he was alleged by the indictment to have defrauded his insurer. The variance between the indictment, which alleged two methods by which the defendant defrauded his insurer, and proof at trial, which showed only one of those two methods, did not prejudice

the fairness of the defendant's trial in any other way. _United States v. Miller,_ 471 U.S. 130, 135, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). "The Court has long recognized that an indictment alleges more crimes or other means of committing the same crime. Indeed, a number of longstanding doctrines of criminal procedure are premised on the notion that each offense whose elements are fully set out in an indictment can independently sustain a conviction." _Id._ at 136.[FN3]

FN3. The Supreme Court in _Miller_ cited the following decisions in support of this notion. _See Turner v. United States,_ 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) ("when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged"); _Crain v. United States,_ 162 U.S. 625, 634-36, 16 S.Ct. 952, 40 L.Ed. 1097 (1896) (indictment count that alleges in the conjunctive a number of means of committing a crime can support a conviction if any of the alleged means are proved); _Dealy v. United States,_ 152 U.S. 539, 542, 14 S.Ct. 680, 38 L.Ed. 545 (1894) (prosecution's failure to prosecute certain counts of an indictment does not affect the validity of the indictment as to the other counts).

## 6. GRAND JURY TRANSCRIPTS.

Defendants move for an order requiring the production of grand jury transcripts. They claim that "[t]he transcripts are the only evidentiary vehicle left available to the defense to inquire upon how the grand jury was manipulated into issuing an indictment outside their jurisdiction and the scope of the statutes alleged to be violated. We believe that the transcripts will be clear and convincing evidence that the defense has been prejudiced from the very onset of this prosecution by malicious intent" (Mot. to Issue Order for Service of Subpoenas at 2). According to FRCrP 6(e)(3) (E), "[t]he court may authorize disclosure-at a time, in a manner, and subject to any other conditions that it directs-of a grand-jury matter ... at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." But "mere 'unsubstantiated, speculative assertions of improprieties in the proceedings' do not supply the 'particular need' required to outweigh the policy of grand jury secrecy." _United States v. Ferreboeuf,_ 632 F.2d 832, 835 (9th Cir.1980).

The reason defendants want this information is misguided. They want to show that the grand jury was misled regarding financial institutions; while the government produced evidence showing fraud on homeowners, it failed to show that financial institutions were affected, defendants argue. Defendants may not, however, go behind the workings of the grand jury in this manner. What matters is the evidence at trial, which overwhelmingly proved defendants' scheme to defraud. The "motion to issue order for service of subpoenas" is therefore **DENIED.**

**\*12** Although defendants have not raised the point, the Court has considered whether the government complied with the Jencks Act, 18 U .S.C. 3500. The government has assured the Court that the only witnesses who testified at the trial and before the grand jury testified as to different subjects before the grand jury. Equally important, defendants made no motion for grand jury transcripts after any witness testified. The Jencks Act specifically calls for this as a requirement for obtaining transcripts. There was no conceivable Jencks Act violation.

* * *

A final word is worthwhile. Defendants have gone to considerable efforts to throw as much sand as possible into the works, treating it all as one vast practical joke. This has been a studied effort to leave the impression that they have been railroaded. Their insistence on wearing jail garb before the jury (while spurning civilian clothing) is but one example. They have also tried to leave the impression that they may be crazy. And, at almost every turn, they have abused the various resources made available for their defense, such as their using the computers and printers provided for their defense to forge orders (purportedly signed) for their release from prison. The Court is convinced-to a moral certainty-that all of this has been part and parcel of their con. They are _not_ mentally incompetent. They are and were perfectly sane. They simply

have no respect for the law or our system of justice, just as they had no qualms in fleecing numerous homeowners and lenders in their Internet scam. Defendants received a fair trial, exceedingly so given the many ways in which they tried to frustrate the process. The trial was conducted justly and the verdict justly deserved.

## CONCLUSION

The motion for acquittal and motion for grand jury documents are **DENIED.**

**IT IS SO ORDERED.**

**N.D.Cal.,2008.**
U.S. v. **Johnson**
Slip Copy, 2008 WL 205596 (N.D.Cal.)

Motions, Pleadings and Filings (Back to top)

• 2007 WL 4566403 (Verdict, Agreement and Settlement) Special Verdict Form (Nov. 14, 2007)
• 2007 WL 4566402 (Trial Motion, Memorandum and Affidavit) Motion to Dismiss with Prejudice Contempt Counts in Superseding Indictment (Nov. 8, 2007)
• 2007 WL 4566401 (Trial Filing) Government's Memorandum Regarding the Law of Substitution of Trustee in a Deed of Trust (Nov. 5, 2007)
• 2007 WL 4566430 (Jury Instruction) Jury Instructions (Oct. 11, 2007)
• 2007 WL 2718820 (Trial Motion, Memorandum and Affidavit) Government's Motion in Limine to Allow Prior Convictions to Impeach Defendant Johnson (Sep. 5, 2007)
• 2007 WL 2718821 (Trial Filing) Government's Trial Memorandum (Sep. 5, 2007)
• 2007 WL 4566429 (Trial Motion, Memorandum and Affidavit) Motion to Dismiss Without Prejudice Certain Bank Fraud Counts in the Superseding Indictment (Sep. 5, 2007)
• 2007 WL 2718818 (Trial Motion, Memorandum and Affidavit) Defendant William Julian's Motion for Severance (Jul. 31, 2007)
• 2007 WL 2718819 (Trial Motion, Memorandum and Affidavit) Unites States'Response to Defendant Julian's Motion to Sever (Jul. 23, 2007)
• 2007 WL 2718817 (Trial Motion, Memorandum and Affidavit) Motion to Dismiss Certain Counts of the Indictment (Jun. 22, 2007)
• 2007 WL 2718816 (Trial Motion, Memorandum and Affidavit) United States' Response to Defendants' Motion to Dismiss Certain Counts in the Indictment (Jun. 21, 2007)
• 2007 WL 2718815 (Trial Motion, Memorandum and Affidavit) United States' Response to Defendants' Motion for A Bill of Particulars or in the Alternative for Declaratory Relief (Jun. 19, 2007)
• 2007 WL 2718814 (Trial Motion, Memorandum and Affidavit) Motion for A Bill of Particulars or in the Alternative A Motion for Declaratory Relief (Jun. 18, 2007)
• 2007 WL 2718813 (Trial Motion, Memorandum and Affidavit) Motion for Limited Disclosure of ""Plea Agreements'' and Settlement Conference Minutes to Heineman and Johnson and Government Counsel Team (May 15, 2007)
• 2007 WL 4566428 (Trial Motion, Memorandum and Affidavit) Motion to Dismiss Certain Bank Fraud Counts in the Superseding Indictment Without Prejudice (Mar. 26, 2007)
• 2007 WL 2718809 (Trial Motion, Memorandum and Affidavit) Government's Motion in Limine to Preclude Defendants from Making Improper Legal Arguments (Mar. 5, 2007)
• 2007 WL 2718810 (Trial Motion, Memorandum and Affidavit) Motion for Court Conducted Voir Dire (Mar. 5, 2007)
• 2007 WL 2718811 (Trial Motion, Memorandum and Affidavit) Motion for Court Instruction Regarding Defendants' Self-Representation (Mar. 5, 2007)
• 2007 WL 2718812 (Trial Motion, Memorandum and Affidavit) Motion for A Pretrial Determination of Admissibility of Certain Statements (Mar. 5, 2007)

- 2007 WL 2718807 (Trial Motion, Memorandum and Affidavit) Declaration of James E. Keller in Support of the Government's Supplemental Sentencing Memorandum as to Charles Dewey Tobias (Jan. 19, 2007)
- 2007 WL 2718808 (Trial Motion, Memorandum and Affidavit) United States' Supplemental Sentencing Memorandum as to Charles Dewey Tobias (Jan. 19, 2007)
- 2007 WL 3029189 (Trial Motion, Memorandum and Affidavit) Defendant's Sentencing Memorandum (Jan. 16, 2007)
- 2006 WL 4900168 (Trial Pleading) Waiver of Indictment (Sep. 26, 2006)
- 2006 WL 4900167 (Trial Pleading) Third Superseding Information (Sep. 25, 2006)
- 2006 WL 4769179 (Trial Pleading) Oakland Venue (Feb. 16, 2006)
- 2006 WL 4900169 (Trial Motion, Memorandum and Affidavit) Defendant's Supplemental Sentencing Memorandum (Jan. 23, 2006)
- 2005 WL 5762902 (Trial Pleading) Oakland Venue (Sep. 22, 2005)
- 3:05cr00611 (Docket) (Sep. 22, 2005)
- 4:05cr00611 (Docket) (Sep. 22, 2005)
- 2005 WL 5976741 (Jury Instruction) Final Charge to the Jury (2005)
- 2005 WL 5976742 (Verdict, Agreement and Settlement) Verdict Form (2005)

END OF DOCUMENT

Adobe Reader is required to view PDF images.



(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

EXHIBIT 3

**Hibben v. Countrywide Home Loans, Inc.**
Not Reported in F.Supp.2d, 2005 WL 3262971
N.D.Ill.,2005.
November 29, 2005 (Approx. 2 pages)

Not Reported in F.Supp.2d, 2005 WL 3262971 (N.D.Ill.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

**United States District Court**,
N.D. Illinois, Eastern Division.
Deborah-Ann: HIBBEN, Plaintiff,
Lawful WOMAN, Creditor Secured Party, the Real Party in Interest,
v.
**COUNTRYWIDE HOME LOANS**, INC., et al., Defendants.
No. 05 C 4262.
Nov. 29, **2005** .

Deborah Ann Hibben, Willowbrook, IL, pro se.

Steven Russell Smith, Bryan Cave, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

MORAN, Senior J.

   ***1*** Plaintiff Deborah-Ann Hibben brought this *pro se* action seeking to enforce an administrative award of $78,471,204 against defendants **Countrywide Home Loans**, David Sambol, Andrew Gissinger III, and Stanford Kurland (collectively "defendants"). To collect that sum plaintiff has requested an entry of default judgment against defendants under FED. R. CIV. P. 55(a). Defendants move to dismiss plaintiff's complaint under Rules 12(b)(6) and 8(a). For the following reasons, defendants' motion to dismiss is granted, and plaintiff's motion for default judgment is denied.

   Under Rule 12(b)(6) a complaint may be dismissed if it fails to state a claim upon which relief can be granted. *Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899, 901* (7th Cir.2004). Whether the complaint survives a 12(b)(6) motion often depends on its ability to meet Rule 8 pleading standards. *Lekas v. Briley, 405 F.3d 602, 606* (7th Cir.2005). Rule 8(a) "requires only (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." *McDonald v. Household Intern. Inc., 425 F.3d 424, 427* (7th Cir.2005) (quoting Rule 8(a)). Notice pleading standards do not require the pleader to provide legal theories. *McDonald, 425 F.3d at 427; Shah v. Inter-Continental Hotel Chicago Operating Corp., 314 F.3d 278, 282* (7th Cir.2002) ("The plaintiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply."). The complaint must, however, plead the minimum facts to put the defendants on notice of the claim so they may file an answer. *Higgs v. Carver, 286 F.3d 437, 439* (7th Cir.2002). The court accepts all well-pleaded allegations and draws all reasonable inferences in plaintiff's favor. *Treadway v. Gateway Chevrolet Oldsmobile, Inc., 362 F.3d 971, 981* (7th Cir.2004). And since plaintiff is proceeding *pro se,* we liberally construe her complaint. *McCormick v. City of Chicago, 230 F.3d 319, 325* (7th Cir.2000).

Before addressing whether plaintiff's complaint states a claim, we must first ask whether we have jurisdiction. *See Wernsing v. Thompson*, 423 F.3d 732, 743 (7th Cir.2005) (federal courts have a *sua sponte* duty to police subject matter jurisdiction); *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir.2002). Federal jurisdiction exists when a claim arises under federal law. *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 404 (7th Cir.2004). Under the well-pleaded complaint rule federal question jurisdiction exists when the plaintiff's complaint raises issues of federal law. *Hart v. Wal-Mart Stores, Inc. Associates' Health and Welfare Plan*, 360 F.3d 674 (7th Cir.2004).

Plaintiff appears to invoke jurisdiction under admiralty law when she writes that she "sets this action and files this action within the Court Clerk 'within the admiralty' pursuant to Special Procedures in Admiralty # Rule E(8)" (cplt.¶ 2). Admiralty issues often present federal questions, but we do not understand plaintiff's reference to "# RuleE(8)." She does, however, state that her action is brought pursuant to 46 U.S. §§ 742-749 (cplt.¶ 7). Those provisions are included in the U.S.Code (Chapter 20 of Title 46), and are titled, "Suits in Admiralty by or Against Vessels or Cargoes of United States." Plaintiff asserts that "all parties are U.S. VESSELS and fit the legal definition of a U.S. Vessel" (cplt.¶ 9) and "[t]he Court Officers/ Master/ Mariners are liable if they mislead/mis-deliver this action into the wrong Court and the law provides for criminal penalties for compliance failures" (cplt.¶ 10). These two paragraphs in the complaint epitomize how this case has absolutely nothing to do with maritime law.

**\*2 Countrywide Home Loans** is a lender, and the remaining defendants are presumably its employees and/or officers. However, the title "Mail Carrier" accompanies defendant Sambol's name in the heading of plaintiff's exhibits. A vessel is defined as "A ship, brig, sloop, or other craft used or capable of being used, in navigation on water." BLACKS LAW DICTIONARY 1562 (6th ed.1990). There are no vessels in this case. Nevertheless, to support her claim that *she* is a vessel, plaintiff writes that "[t]he injured party petitioner/libellant, intervenor holds a priority commercial claim against the debtor named DEBORAH ANN HIBBEN, Stramineus Homo, A U.S. Vessel by legal definition" (cplt. facts ¶ 14). The latinate allusion to a straw man provides metaphoric support to a person as a vessel, but it does nothing to show that this is a maritime case. Further, the brief mention of Title 46 in her jurisdictional statement, the occasional allusion to the parties and Court Clerk as vessels, and reference to the lawsuit and docket file as cargo, do not together transform this case into one arising under the maritime statutes.[FN1] It is true that plaintiff need not plead legal theories, and may even skate by after identifying an incorrect legal theory ( *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992)), but here plaintiff has plead herself out of court by demonstrating that no federal jurisdiction exists.[FN2]

FN1. If this is a tort action, then we look to see if there is a ship or other vessel involved. And if it is a contract action, we must determine if the contract is a maritime one. *See Norfolk Southern Ry. v. James N. Kirby, Pty Ltd.*, --- U.S. ----, ----, 125 S.Ct. 385, 393, 160 L.Ed.2d 283 (2004). But plaintiff does not present a contract or allege a tort committed by defendants against her. Moreover, to effectuate maritime commerce and be a maritime contract, the bill of lading must "require [ ] substantial carriage of goods by sea." *Id. at 395.* Plaintiff does not allege any carriage by sea.

FN2. Plaintiff has not invoked diversity of citizenship jurisdiction under 28 U.S.C. § 1332.

That marks the end of the matter, but several issues still deserve attention. Defendants claim that the complaint should be dismissed because it is unintelligible. They are right. It is impossible to glean from the complaint, even under the most generous reading, how defendants harmed plaintiff. There are no facts consistent with the complaint, under any legal theory, that would entitle plaintiff to the relief she seeks. *See Small v. Chao*, 398 F.3d 894, 898 (7th Cir.2005). Thus, even if plaintiff could establish jurisdiction, her complaint must be dismissed because it is unintelligible and fails to inform defendants of their alleged wrongdoing. *See Davis v. Ruby Foods*, 269 F.3d 818, 820 (7th Cir.2001) (dismissing an unintelligible claim is not unexceptional). Leave to replead is often granted when a claim is dismissed under Rule 8(a) for being unintelligible. *Lindell v. McCallum*, 352 F.3d 1107, 1110 (7th Cir.2003). However, plaintiff's

complaint is beyond the point of resuscitation, and it is dismissed with prejudice. Unlike *Lindell,* there is no claim buried in plaintiff's complaint that entitles her to a second chance and an opportunity to replead. This is not a situation where extraneous matter in the complaint can be shaved off, leaving a trimmed down and valid complaint. *See Davis,* 269 F.3d at 820-21.

Plaintiff's stated basis for relief also merits a brief discussion. Plaintiff contends that her administrative award is recognized under the Hague Convention, and she attaches what she depicts as "an Internationally Certified, Authenticated, Official Record and Public document of the United States." But she also says that she is entitled to the return of funds "claimed where payment was demanded on a fraudulent contract with [defendants] of $97,151.00, plus all sums subsequently fraudulently liened/levied, and $75.00 per hour" for time that she spent mailing defendants notices. And in her "Relief Sought" section, she requests that "the AGREEMENT/CONTRACT be enforced as the third party/defendants/libellees are in trespass and violation of the AGREEMENT/CONTRACT and are failing to state a claim upon which relief can be granted." But she attaches no agreement or contract, and it is impossible to determine the nature of the underlying debt owed, if it is a debt that plaintiff seeks to collect.

**\*3** The purported source of plaintiff's administrative award appears to be an "International Commercial Claim in Admiralty Administrative Remedy" ( *see* plf. exs. A-D). The court is not familiar with this agency, much less the legal significance of an award issued by it. The several courts that have considered "International Commercial Claims" have found them to be without merit.

In *Peters v. BMW of N. America, Inc.,* 2005 U.S. Dist. LEXIS 20994, \*11, the plaintiff filed against defendant " 'a NOTICE OF INTERNATIONAL COMMERCIAL CLAIM ADMIRALTY ADMINISTRATIVE RELIEF to the Circuit Court of Prince George's County." ' This filing and others like it prompted the court to issue a pre-filing injunction against the plaintiff, a frequent filer of vexatious and frivolous claims, including the "international commercial claim." Plaintiff's exhibits also mirror filings made in *United States v. Dutson,* **2005** U.S. Dist. LEXIS 3840 (D.Ariz.**2005**). In that case the defendants mailed to the court a "Notice of International Commercial Claim within the Admiralty ab initio," which named the court as "libellee," just as plaintiff names defendants "libellee." *Dutson,* **2005** U.S. Dist. LEXIS 3840, \*6. After listing other filings the defendants submitted, which again mirror the documents plaintiff has submitted ( *see* "Notice of Demand and Settlement for the Closing of the Escrow" \*7; plf. resp. ex. F), the court concluded:

It would serve no useful purpose to attempt to otherwise summarize the materials filed by Defendants. Suffice it to say that they threaten various actions and/or penalties, against the Court ... or government attorneys are generally unintelligible, legally frivolous, void, and a nullity. The [sic] have no legal force or effect and are unenforceable.

( *Id.* at \*8). As in *Dutson,* in *United States v. Bryan,* **2005** WL 1335520, \*4 (E.D.Cal.**2005**), the defendant filed documents that mirror those filed by plaintiff ("Notice of International Commercial Claim Administrative Remedy," "Notice of Fault-Opportunity to Cure," "Notice of Demand and Settlement for Closing of Escrow," and "Notarial Protest and Notice of Administrative Judgment Certificate of the Escrow."). In *Bryan,* the court concluded that the defendant's filings were "frivolous devices used to harass government employees and granted the plaintiff summary judgment." *Id.*

It appears that plaintiff's complaint is of the same ilk as the filings made in *Duston, Bryan,* and *Peters.* The separate and idiosyncratic complaints are identical in many respects. We hesitate to suggest that the complaints derive from a common source, which could possibly warrant other measures beyond the scope of defendants' motion to dismiss. We instead conclude that dismissal with prejudice sufficiently resolves the matter. Further, since there is no judgment to enforce, plaintiff's request for default judgment is denied.

*CONCLUSION*

**\*4** Plaintiff's motion for default judgment is denied, and the complaint is dismissed with prejudice.

N.D.Ill.,**2005**.
Hibben v. **Countrywide Home Loans**, Inc.
Not Reported in F.Supp.2d, 2005 WL 3262971 (N.D.Ill.)


Motions, Pleadings and Filings <u>(Back to top)</u>

- <u>2005 WL 3286345</u> (Trial Motion, Memorandum and Affidavit) Reply to Defendants ""motion to Dismiss'' (Oct. 28, 2005) <u>Original Image of this Document (PDF)</u>
- <u>2005 WL 2870925</u> (Trial Motion, Memorandum and Affidavit) Motion to Dismiss (Sep. 7, 2005) <u>Original Image of this Document with Appendix (PDF)</u>
- <u>2005 WL 2242704</u> (Trial Pleading) Complaint (Jul. 25, 2005)
- <u>1:05cv04262</u> (Docket) (Jul. 25, 2005)
END OF DOCUMENT


Adobe Reader is required to view PDF images.



(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

EXHIBIT 4

**Brown v. McQuaid**
Not Reported in F.Supp.2d, 2007 WL 1425497
D.Del.,2007.
May 09, 2007 (Approx. 1 page)


Not Reported in F.Supp.2d, 2007 WL 1425497 (D.Del.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

**United States District Court**,
D. Delaware.
Edward Everett BROWN, Jr., Plaintiff,
v.
Gerald F. **McQUAID d/b/a Chevy Chase FSB** U.S. Vessel V-P Bank Operation, et al.,
Defendants.
No. Civ. 06-551-SLR.
May 9, **2007**.

Edward Everett Brown, Jr., Burtonsville, MD, pro se.


**MEMORANDUM ORDER**


SUE L. ROBINSON, United States District Judge.
   ***1** At Wilmington this 9th day of May, **2007** , this cause coming before the court on plaintiffs notice of international commercial claim in admiralty administrative remedy to be registered in this court as a foreign judgment;

   IT IS ORDERED that the case is dismissed for lack of subject matter jurisdiction and the clerk of the court is directed to return plaintiffs check for the filing fee and to close the case, for the reasons that follow:

   1. **Background.** This case was filed by Edward Everett: Brown, Jr., who proceeds pro se. The complaint was filed on September 6, 2006, and is captioned as an admiralty case. (D.I.1) The civil cover sheet states that the nature of the suit is a contract action for recovery of overpayment and enforcement of judgment and describes the action as "foreign jurisdiction." Attached to the complaint is a document from the State of Maryland Department of Assessments and Taxation confirming an amendment to File No. 181264183, a receipt of the filing fee payment and a one page document entitled UCC Financing Statement Amendment signed by the plaintiff as "Secured Party Creditor Without Recourse UCC-1-308." Along with his filing, plaintiff remitted a $39.00 filing fee, the normal fee to register a foreign judgment. Because it appeared that plaintiff was filing a civil case and had not remitted the correct amount, the check was returned to him. (D.I.5) On March 22, **2007**, the court entered an order for plaintiff to advise if this case was to proceed as a civil admiralty action or if the matter was to register a foreign judgment. (D.I.9) On April 24, **2007**, plaintiff submitted an official looking document, complete with a gold seal, entitled "Notice of International Commercial Claim in Admiralty Administrative Remedy" and submitted a second $39.00 check as payment to register the judgment. (D.I.10)

   2. **Standard of Review.** A federal court may, at any time, raise the issue of whether it properly has subject matter jurisdiction. See Fed.R.Civ.P. 12(h)(3). The court is not limited to the face of the pleadings in determining whether it has subject matter jurisdiction; it "may

review any evidence to resolve factual disputes concerning the existence of jurisdiction." _Norman v. United States,_ No. 95-4111, 1996 WL 377136, at *1 (E.D.Pa. July 3, 1996), _aff'd,_ 111 F.3d 356 (3d Cir.1997).

3. "A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown." 28 U.S.C. § 1963.

**4. Discussion.** The purported source of plaintiffs administrative award appears to be an "International Commercial Claim in Admiralty Administrative Remedy". The court is unfamiliar with this agency and/or judicial branch. Courts that have considered "International Commercial Claims" have found them to be without merit. _See_ _Mock v. Merck & Co., Inc.,_ No. 3:06mc1/MCR/EMT, 2006 WL 2094677 (N.D.Fla. Jul. 27, 2006) (admiralty administrative remedy judgment is not enforceable through the federal registration statute); _Hibben v. Countrywide Home Loans, Inc.,_ No. 05 C 4262, 2005 WL 3262971 (N.D.Ill. Nov. 29, 2005); _Peters v. BMW of N. America, Inc.,_ No. Civ.A. DKC2004-3451, 2005 WL 2250785 (D.Md. Sept. 15, 2005); _United States v. Dutson,_ Nov. CIV.04-2585 PHX EHC, 2005 WL 605831 (D.Ariz. Mar. 10, 2005) (documents have no legal force or effect and are unenforceable).

**\*2** 5. Upon review of plaintiff's pleading, the court concludes that plaintiff has failed to establish a jurisdictional basis for this action. Although federal law provides for the registration of foreign judgments for enforcement, that statute applies only to judgments of other federal courts of appeals, district courts, bankruptcy courts, and the Court of International Trade. _See_ 28 U.S.C. § 1963. Plaintiff's filings do not fall within the scope of § 1963. Inasmuch as plaintiff has failed to provide a judgment that is enforceable through the federal registration statute, he has failed to demonstrate a jurisdictional basis for this action.

7. **Conclusion.** Based upon the foregoing analysis, the case is dismissed for lack of subject matter jurisdiction. The clerk of the court is directed to return plaintiff's $39.00 filing fee check. The clerk of the court is further directed to close this case.

D.Del.,**2007**.
Brown v. **McQuaid**
Not Reported in F.Supp.2d, 2007 WL 1425497 (D.Del.)


Motions, Pleadings and Filings (Back to top)

• 1:06cv00551 (Docket) (Sep. 6, 2006)
END OF DOCUMENT


Adobe Reader is required to view PDF images.



(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

EXHIBIT 5

**Termarsch v. HomEq Servicing Corp.**
Not Reported in F.Supp.2d, 2006 WL 626050
E.D.Mich.,2006.
March 13, 2006 (Approx. 1 page)

Not Reported in F.Supp.2d, 2006 WL 626050 (E.D.Mich.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

**United States District Court**,
E.D. Michigan, Southern Division.
David Lee TERMARSCH and Sherry Ann Termarsch, Plaintiffs,
v.
**HOMEQ SERVICING CORPORATION**, Deutsche Bank National Trust Company, New Century
Mortgage, and Fabrizio & Brook, P.C., Defendants.
No. 05-73137.
March 13, **2006** .

David Lee Termarsch, Lakeland, FL, pro se.

Sherry Ann Termarsch, Lakeland, FL, pro se.

Marilyn H. Mitchell, Evans & Luptak, Thomas G. Costello, Lipson, Neilson, Bloomfield Hills, MI, for
Defendants.

*OPINION AND ORDER*

DUGGAN, J.
 **\*1** Plaintiffs David TerMarsch and Sherry Ann TerMarsch, husband and wife, filed this lawsuit
on August 15, 2005, alleging that Defendants violated various federal laws with respect to
Plaintiffs' mortgage on real property in Metamora, Michigan.[FN1] After Defendants filed motions for
more definite statement, Plaintiffs filed an amended complaint on September 19, 2005. Plaintiffs'
amended complaint contains twenty-two causes of action in which Plaintiffs primarily allege that
Defendants failed to disclose or provide certain documentation or information with respect to
their mortgage. Plaintiffs also claim that Defendants wrongfully refused to accept the
"instrument" Plaintiffs tendered in full payment of their loan and then improperly sought to
foreclose on the property securing the loan when Plaintiffs failed to submit any further monthly
mortgage payments. Plaintiffs seek an order enjoining Defendants from foreclosing on their
property, rescission of the mortgage, and monetary damages.

FN1. On November 18, 2005, this Court issued an Opinion and Order dismissing Plaintiffs' claims
against Defendant Fabrizio & Brook.

 Currently pending before the Court is Plaintiffs' motion for summary judgment and a motion
to dismiss or, alternatively, motion for summary judgment filed by Defendants' **HomEq
Servicing Corporation** ("HomEq") and Deutsche Bank National Trust Company ("Deutsche
Bank"). **HomEq** and Deutsche Bank filed a response to Plaintiffs' motion, as did Defendant New
Century Mortgage **Corporation**.[FN2] Plaintiffs failed to respond to **HomEq's** and Deutsche Bank's
motion. On February 1, **2006**, this Court issued a notice informing the parties that it is
dispensing with oral argument pursuant to Rule 7.1(e)(2) of the Local Rules for the Eastern
District of Michigan.

FN2. On February 24, **2006**, Plaintiffs filed a motion entitled "Plaintiffs' motion to strike NEW CENTURY MORTGAGE **CORPORATION'S** opposition to and brief in support of its opposition to plaintiffs' motion for summary judgment for the breach of contract, NOTICE OF INTERNATIONAL COMMERCIAL CLAIM WITHIN THE ADMIRALTY, ADMINISTRATIVE REMEDY, in which the officers of NEW CENTURY MORTGAGE **CORPORATION** agreed by their silence and default, that once said officers admitted the statements and claims by TACIT PROCURATION, all issues would be deemed settled RES JUDICATA, STARE DECISIS and COLLATERAL ESTOPPEL." As explained *infra* at pages 3-4, the Court disagrees with Plaintiffs that New Century has admitted by "silence and default" the claims in this lawsuit. Thus this Court concludes that New Century was entitled to file an opposition and brief in support of its opposition to Plaintiffs' motion for summary judgment. Plaintiffs' motion to strike therefore will be denied.

Plaintiffs' Motion for Summary Judgment

Relying on Mr. TerMarsch's January 2005 "Notice of Commercial Claim in Admiralty Administrative Remedy," an apparent "Amended Notice" sent on January 27, 2005, his July 5, 2005 letter to Defendants, and his July 18, 2005 affidavit, Defendants alleged failure to respond to those communications, and a document entitled "Notarial Protest and Notice of Administrative Judgment Certificate of Dishonor ( *see* Pls.' Mot. Ex. D), Plaintiffs claim that the allegations in their complaint should be deemed admitted and that they therefore are entitled to summary judgment.

Plaintiffs cite no authority for this Court to treat as admitted the allegations contained in Mr. TerMarcsh's pre-suit letter, affidavit, and/or notices to Defendants. While Mr. TerMarsch refers to the APA in the affidavit he sent to Defendants, the APA-which relates to federal agency action-has no application to Plaintiffs' claims or mortgage. The Real Estate Settlement Procedures Act ("RESPA") referred to in Mr. TerMarsch's July 5, 2005 letter authorizes a borrower to submit certain inquiries to a loan servicer. *See* 12 U.S.C. § 2605(e). Plaintiffs, however, fail to cite any provision in the statute that would render any statements in the borrower's communications admitted if not responded to by the loan servicer.

**\*2** The final document on which Plaintiffs rely, *see* Pls.' Mot. Ex. D, refers to Plaintiffs' January 2005 "Notice of International Commercial Claim in Admiralty Administrative Remedy" and "Amended Notice." Plaintiffs state in Exhibit D to their motion that they allowed ten days for Defendants to respond to these notices, but no response was made. *See id.* The Court cannot comprehend exactly what Exhibit D purportedly represents; nevertheless, the Court is convinced that Plaintiffs' claims in this lawsuit and their mortgage loan have nothing to do with admiralty law.[FN3] *See Norfolk S. Ry. Co. v. Kirby,* 543 U.S. 14, 125 S.Ct. 385, 393, 160 L.Ed.2d 283 (2004)(explaining how to ascertain whether a contract arises under maritime or admiralty law).

FN3. Exhibit D also refers to "ADMINISTRATIVE JUDGMENT BY ESTOPPEL" in accordance with Uniform Commercial Code Section 3-509. *See* Pls.' Mot. Ex. D at 2. U.C.C. Section 3-509 does not exist.

The Court therefore finds no authority to support Plaintiffs' claim that Defendants admitted the allegations in Mr. TerMarsch's affidavit, letter, or notices "by silence and default." As Plaintiffs present no other evidence to support their claims, the Court does not agree with Plaintiffs that the allegations in their complaint are "facts not in dispute." Thus the Court concludes that they are not entitled to summary judgment.

**HomEq's** and Deutsche Bank's Motion to Dismiss or, Alternatively, for Summary Judgment [FN4]

FN4. As the Court relies on exhibits attached to the motion, as well as exhibits attached to Plaintiffs' motion for summary judgment and Defendants' responses thereto, it will treat

**HomEq's** and Deutsche Bank's motion as a motion for summary judgment pursuant to <u>Rule 56(c) of the Federal Rules of Civil Procedure</u>.

   **HomEq** and Deutsche Bank contend that Plaintiffs' claims are not supported by the laws they cite or that the facts do not support a violation of those laws. The Court has carefully reviewed Plaintiffs' amended complaint, **HomEq's** and Deutsche Bank's motion, and the brief in support of the motion. For the reasons set forth in the motion and accompanying brief, the Court concludes that Plaintiffs fail to state a claim upon which relief may be granted against **HomEq** and Deutsche Bank or that they fail to present evidence to support their claims against these defendants.


   Accordingly,

   IT IS ORDERED, that Plaintiffs' motion for summary judgment is DENIED;

   IT IS FURTHER ORDERED, that **HomEq's** and Deutsche Bank's motion for summary judgment is GRANTED and therefore Plaintiffs' claims against these defendants are DISMISSED WITH PREJUDICE;

   IT IS FURTHER ORDERED, that Plaintiffs' motion to strike New Century's opposition to and brief in support of its opposition to Plaintiffs' motion for summary judgment is DENIED.

E.D.Mich.,**2006**.
Termarsch v. **HomEq Servicing Corp**.
Not Reported in F.Supp.2d, 2006 WL 626050 (E.D.Mich.)


Motions, Pleadings and Filings <u>(Back to top)</u>

• <u>2:05cv73137</u> (Docket) (Aug. 15, 2005)
END OF DOCUMENT


Adobe Reader is required to view PDF images.



(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

EXHIBIT 6

**Mock v. Merck & Co., Inc.**
Slip Copy, 2006 WL 2094677
N.D.Fla.,2006.
July 27, 2006 (Approx. 1 page)

Slip Copy, 2006 WL 2094677 (N.D.Fla.)

Only the Westlaw citation is currently available.

**United States District Court**, N.D. Florida,
Pensacola Division.
Edward Lee MOCK, Plaintiff,
v.
**MERCK** & CO., INC., Defendant.
No. 3:06mc1/MCR/EMT.
July 27, **2006**.

Edward Lee Mock, Pensacola, FL, pro se.


**ORDER**


M. CASEY RODGERS, District Judge.
   **\*1** This cause comes on for consideration upon the magistrate judge's report and recommendation dated June 27, **2006** . Plaintiff has been furnished a copy of the report and recommendation and has been afforded an opportunity to file objections pursuant to Title 28, United States Code, Section 636(b)(1). I have made a *de novo* determination of any timely filed objections.

   Having considered the report and recommendation, and any objections thereto timely filed, I have determined that the report and recommendation should be adopted.

   Accordingly, it is now **ORDERED** as follows:

   1. The magistrate judge's report and recommendation is adopted and incorporated by reference in this order.

   2. This cause is **DISMISSED** for lack of subject matter jurisdiction and the clerk is directed to close the file.

   3. All pending motions are **DENIED** as moot.

   **DONE AND ORDERED** this 27th day of July, **2006**.


ELIZABETH M. TIMOTHY, Magistrate Judge.

**REPORT AND RECOMMENDATION**

   This cause is before the court on Plaintiff's "Commercial Notice Within the Admiralty of the Filing of Foreign Judgment Default Under FRCP 55(a)" (Doc. 1). Plaintiff has paid the filing fee for registration of a foreign judgment.

Plaintiff states that on May 18, 2005, he filed a "claim" with Defendant demanding damages in the amount of $100,000,000.00 for medical problems allegedly suffered by Plaintiff as a result of his using Vioxx, a drug manufactured by Defendant ( *id.* at 1). Plaintiff states that on June 20, 2005, he sent a "Notice of Non-Response and Opportunity to Cure" to Mr. Raymond V. Gilmartin, President and Chief Executive Officer of Defendant, and provided him thirty days to respond ( *id.*). On July 20, 2005, Plaintiff sent a "Notice of Dishonor" to Mr. Gilmartin, providing him three days to "cure the condition of Fault [sic]" ( *id.*). On October 12, 2005, Plaintiff sent Mr. Gilmartin a "Notarial Protest Certificate" allegedly "documenting" an "administrative judgment" against Defendant in the amount of $300,000,000.00 ( *id.* at 1-2). Plaintiff states that he filed a UCC-1 Financing Statement in the "Florida UCC Office" reflecting Defendant's consent to an "Admiralty Maritime lien filing in the International commercial claim within the Admiralty Administrative Remedy Judgment by Estoppel Agreement for Contract file # ELM05182005" in the amount of $300,000,000.00 ( *id.* at 2).

After filing his initial pleading in this case, Plaintiff filed a motion for issuance of default judgment against Defendant (Doc. 2). As grounds for the default judgment, Plaintiff stated that ten days had elapsed since the filing of this action with no payment in satisfaction of the "administrative judgment" by Defendant. Upon review of Plaintiff's pleading, it appears that this court lacks subject matter jurisdiction; therefore, dismissal of this action is warranted.

A federal court must dismiss a case whenever it appears the court lacks subject matter jurisdiction. *Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir.1999) (citations omitted); *Tylon v. Kloak,* 98 Fed.Appx. 511, 2004 WL 729173, at * * 1 (7th Cir.2004). The absence of jurisdiction may be raised at any time during the case, and may be based on the court's review of the evidence. *Lovern,* 190 F.3d at 653 (citations omitted). Addressing jurisdictional issues at the outset of the litigation is often the most efficient procedure. *Id.* (citations omitted). A district court may address its lack of subject matter jurisdiction in two ways: the court may find insufficient allegations in the pleading, viewing the alleged facts in the light most favorable to Plaintiff, similar to an evaluation pursuant to Rule 12(b)(6), or, after an evidentiary hearing, the court may weigh the evidence in determining whether the facts support the jurisdictional allegations. *Id.* (citations omitted). The burden is on the party asserting jurisdiction to demonstrate that jurisdiction in fact exists. *Id.* at 654 (citing *Thomas v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed.2d 951 (1942)).

***2** Upon review of Plaintiff's pleading, the court concludes that Plaintiff has failed to establish a jurisdictional basis for this action. Although federal law provides for the registration of foreign judgments for enforcement, that statute applies only to judgments of other federal courts of appeals, district courts, bankruptcy courts, and the Court of International Trade. *See* 28 U.S.C. § 1963. Furthermore, registration is accomplished by filing a certified copy of the federal judgment. *Id.* In the instant case, Plaintiff does not allege that the "administrative judgment" he obtained against Defendant was a judgment of another federal court, nor has he submitted a certified copy of the alleged judgment. As Plaintiff has failed to allege the existence of a judgment that is enforceable through the federal registration statute, he has failed to demonstrate a jurisdictional basis for this action.

Accordingly, it is respectfully **RECOMMENDED:**

1. That this cause be **DISMISSED** for lack of subject matter jurisdiction and the clerk be directed to close the file.

2. That all pending motions be **DENIED** as moot.

N.D.Fla.,**2006**.
Mock v. **Merck** & Co., Inc.
Slip Copy, 2006 WL 2094677 (N.D.Fla.)

END OF DOCUMENT

Adobe Reader is required to view PDF images.



(C) 2008 Thomson/West. No Claim to Orig. US Gov. W

**PROOF OF SERVICE**

**STATE OF CALIFORNIA**      )
                              )    ss.

**COUNTY OF ORANGE**         )

        I am employed in the County of Contra Costa, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 5 Park Plaza, Suite 1100, Irvine, CA 92614-5979.

        On March 27, 2008 I served the document(s) described as DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PETITION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED on all interested parties in said action by placing a true copy thereof in a sealed envelope addressed as stated on the ATTACHED SERVICE LIST.

X     **BY MAIL:** as follows:

      X      **STATE** - I am "readily familiar" with Wolfe & Wyman LLP's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Walnut Creek, California, in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

      ☐      **FEDERAL** – I deposited such envelope in the U.S. Mail at Walnut Creek, California, with postage thereon fully prepaid.

☐     **BY EXPRESS MAIL** as follows:  I caused such envelope to be deposited in the U.S. Mail at Walnut Creek, California.  The envelope was mailed with Express Mail postage thereon fully prepaid.

☐     **BY CERTIFIED MAIL** as follows:  I am "readily familiar" with Wolfe & Wyman LLP's practice for the collection and processing of correspondence for mailing with the United States Postal Service; such envelope will be deposited with the United States Postal Service on the above date in the ordinary course of business at the business address shown above; and such envelope was placed for collection and mailing, by Certified United States Mail, Return Receipt Requested, on the above date according to Wolfe & Wyman LLP's ordinary business practice.

☐     **BY PERSONAL SERVICE** as follows:  I caused a copy of such document(s) to be delivered by hand to the offices of the addressee between the hours of 9:00 A.M. and 5:00 P.M.

☐     **BY OVERNIGHT COURIER SERVICE** as follows:  I caused such envelope to be delivered by overnight courier service to the offices of the addressee.  The envelope was deposited in or with a facility regularly maintained by the overnight courier service with delivery fees paid or provided for.

X     **STATE**        I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed On March 27, 2008, at Irvine, California.

                                       _____
                                        David Felton

**SERVICE LIST**
**UNITIED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**
**JAIME P. ARAUJO, ROSA A. ARAUJO V.NATIONAL CITY MORTGAGE CO.**
**W&W File No. 1396-000**
**[Revised:March 27, 2008]**

Jaime P. Araujo & Rosa A. Araujo
In Pro Per
17 Dunsmuir Street
San Francisco, CA 94434

1  **Eric M. Schiffer (SBN 179695)**
   **Kelly A. Beall (SBN 162456)**
2  **WOLFE & WYMAN LLP**
   **5 Park Plaza, Suite 1100**
3  **Irvine, California 92614-5979**
   **Telephone:  (949) 475-9200**
4  **Facsimile:   (949) 475-9203**

5  **Attorneys for Defendant**
   **NATIONAL CITY MORTGAGE COMPANY**

6

7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11  JAIME P. ARAUJO, ROSA A. ARAUJO          Case No.: CV080695
    Sramineus Homo, US Vessel
12
                                             *Action Filed:  January 30, 2008*
13          **Libellant,**

            V.
14
    NATIONAL CITY MORTGAGE CO., U.S.         **[PROPOSED] ORDER FOR**
15  Vessel DOES, ROES, AND MOES 1-100 et     **MOTION OF NATIONAL CITY**
    al, US Vessel sand                       **MORTGAGE COMPANY TO**
16                                           **DISMISS PLAINTIFF'S PETITION**
            **Libellees,**                   **FOR FAILURE TO STATE A**
17                                           **CLAIM UPON WHICH RELIEF**
    ─────────────────────────────────        **CAN BE GRANTED**
18  Jaime-Pablo: Araujo & Rosa-Amanda:
    Araujo Lien Holder of the Vessel, the Real
19  Party In Interest, Lawful Man
    **Injured Third Party**                  Date:        May 8, 2008
20  **Intervener/Petitioner/ Libellant,**     Time:        2:00 p.m.
                                             Courtroom:   2
21          V.

22  NATIONAL CITY MORTGAGE CO., U.S.         Honorable    Claudia Wilken
    Vessel, DOES, ROES, and MOES 1-100 et
23  al
            **US VESSELS**
24  **INDIVIDUALLY AND SEVERALLY**
    **Third Party Defendants/Libellees**
25  ─────────────────────────────────

26      **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

27          **PLEASE TAKE NOTICE** that Defendant NATIONAL CITY MORTGAGE

28  COMPANY'S Motion to Strike the Complaint of Plaintiffs JAIME P. ARAUJO and

                                    1

1    ROSA A. ARAUJO came on regularly for hearing before this Court on May 8, 2008

2    at 2:00p.m.  Defendant NATIONAL CITY MORTGAGE COMPANY appeared

3    through its attorneys of record, Kelly Andrew Beall of Wolfe & Wyman LLP.

4    Plaintiffs appeared in pro per.

5        After consideration of all moving, opposing, and reply papers, as well as oral

6    arguments before the Court, and good cause otherwise appearing therefore,

7    **IT IS HEREBY ORDERED THAT:**

8        1.        Defendant NATIONAL CITY MORTGAGE COMPANY'S

9    Motion to Strike is sustained without leave to amend.

10

11   **IT IS SO ORDERED**

12   DATED:

13                                          JUDGE OF THE DISTRICT COURT

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2